**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HERONS COVE ENTERPRISES, LLC,**

        **Plaintiff,**

**-vs-**                                                           **Case No.  6:08-cv-465-Orl-22DAB**

**EPIC CONSULTING, INC.,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION TO DISMISS COUNT I AND COUNT II OF THE COMPLAINT (Doc. No. 5)**
>
> **FILED:**      **April 4, 2008**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** with leave to amend Plaintiff's negligence claim, as set forth herein.

Plaintiff Herons Cove Enterprises, LLC ("Herons Cove"[1]) is suing Defendant Epic Consulting, Inc. ("Epic") for claims arising out of Epic's performance of a condominium conversion assessment and property condition report. Doc. No. 5. Epic moves to dismiss Count I (negligence) and Count II (breach of fiduciary duty), arguing that it did not owe a legal duty of care to Plaintiff Herons Cove.

---

[1] Herons Cove Enterprises, LLC was substituted as assignee for the original Plaintiff Herons Cove Apartments, LLC, pursuant to Federal Rule of Civil Procedure 25(c). Doc. No. 22. Judge Conway granted the Motion to Substitute on June 25, 2008. Doc. No. 23.

Herons Cove responds that Epic was retained by Primary Capital Advisors for the benefit of Herons Cove; therefore, Epic owed a legal duty of care to Herons Cove in performing its obligations as professional engineers and consultants. Doc. No. 12.

## **STANDARD OF REVIEW**[2]

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. __, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To satisfy the Rule 8 pleading requirements, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See also Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (citations omitted). Previously, the general standard provided that a complaint should not be dismissed for failure to state a claim unless it appeared beyond doubt that plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

However, the former "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41 (1957) has been "retired" in favor of a somewhat heightened requirement for a plaintiff to supply more than just any conceivable set of facts tending to support a claim, but "enough facts to state a claim to relief that is plausible on its face." *Huggins v. Marriott Ownership Resorts, Inc.*, __ F. Supp.2d __, No. 6:07-cv-1514-Orl-22KRS, 2008 WL 552590 (M.D. Fla. Feb. 27, 2008) (discussing *Twombly* in dismissing claims for breach of implied duty of good faith and fair dealing) (Conway, J.); *see also In re Faro*

---

[2]Epic erroneously cites Florida substantive case law for the proposition that Florida is a fact-pleading jurisdiction (Doc. No. 5 at 4) rather than federal case law for the standard on a motion to dismiss, which is controlled by Federal Rule of Civil Procedure 12, not state law.

*Technologies Securities Litigation*, 534 F.Supp.2d 1248, 1255 (M.D. Fla. 2007) (granting dismissal of certain securities fraud claims).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1965. Plaintiff must plead enough facts to state a plausible, and not merely conceivable, basis for the claim. *Id.*

Dismissal is also warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of a plaintiff's complaint, there remains a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

## BACKGROUND FACTS[3]

In August of 2005, Herons Cove Apartments, LLC[4], was formed as a Florida limited liability company for the purpose of purchasing Herons Cove Apartments, located in Orlando, Florida (the "Property") for conversion of the 324 units in the complex into condominium units. Doc. No. 2 ¶¶ 3, 6-7; 2-3 at 6. Herons Cove Apartments, LLC was backed by certain investors, including Watson

---

[3] The facts are read in the light most favorable to Plaintiff, as they must be at the motion to dismiss stage. *See Erickson*, 551 U.S. _, 127 S.Ct. 2197.

[4] Herons Cove Enterprises, LLC, has been substituted as assignee for the original Plaintiff Herons Cove Apartments, LLC. *See* Doc. No. 22.

Real Estate and Management, Inc., who engaged professionals in various areas of specialty. Doc. No. 2 ¶¶ 7-8. The purchase price of the Property was approximately $27 million. Doc. No. 2 ¶ 9.

Herons Cove engaged Primary Capital Advisors ("PCA") for assistance in evaluating the financial aspects of the conversion. Doc. No. 2 ¶ 11. On September 29, 2005, PCA retained Epic to perform a property condition assessment, condominium conversion assessment, and environmental assessment of the Property (the "Reports"). Doc. No. 2 ¶¶ 11-12. Epic provided the Property Condition Report and Phase I Environmental Site Assessment and the Condominium Conversion Report in October 2005. Doc. No. 2-3, 2-4.

PCA's president is Barry L. Watson, who signed the Engagement Letter that hired Epic. *See* Doc. No. 2-2 at 3. According to Plaintiff, Mr. Watson is president of Watson Real Estate and Management, Inc., which is one of two members of Heron's Cove Apartments, LLC. Doc. No. 9 (Certificate of Interested Persons). Mr. Watson was also present when the Epic employee did the site visit to the Property. The Executive Summaries of both the Property Condition Report and the Condominium Conversion Report state that Todd Cohen of PCA retained Epic to perform them. Doc. Nos. 2-3 at 6; 2-4 at 4. The Epic employee who visited the Property was accompanied by "Todd Cohen (client representative)", "Barry Watson (borrower representative) and his accountant" during the inspection. Doc. No. 2-3 at 6.

In the Reports, Epic made express representations regarding the cost of repairs totaling $1.5 million that Herons Cove would have to incur over the 12 year period following the purchase of the property. Doc. No. 2 ¶ 15. Based on the representations made by Epic, Herons Cove made the decision to purchase the Property. Doc. No. 2 ¶ 18. Subsequent to Herons Cove's purchase of the

Property on January 18, 2006, Herons Cove learned that the cost for repairs over the initial 12 year period were more accurately estimated to be $4.5 million. Doc. No. 2 ¶¶ 19, 24.

In its Complaint, Herons Cove alleges that Epic was negligent in performing the Reports, substantially underestimating the cost of repairing the property. Doc. 2. Herons Cove also alleges that Epic had a fiduciary duty to Herons Cove, which it breached through its negligent performance of the Reports that Herons Cove relied on in determining whether to invest $27,000,000 in the property. Doc. No. 2.

## ANALYSIS

Epic's Motion to Dismiss asserts that Epic did not owe a legal duty of care to Herons Cove, only to PCA, who actually retained Epic by executing the engagement letter and the authorization to proceed. Epic contends that the engagement letter and the acceptance are silent as to the interest of any third-party beneficiary. Doc. No. 5. Epic also asserts that Herons Cove and Epic are not in privity of contract and no claim has been asserted for breach of contract based on a third-party beneficiary basis. Nor did a fiduciary duty exist between the parties, according to Epic.

### A. Count I

### 1. Negligence claim

Florida has adopted the standard set forth in the Restatement (Second) of Torts § 552 (1977) regarding accountants' liability to those relying on their Reports:

> *Information Negligently Supplied for the Guidance of Others*
> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1976). In *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So.2d 9, 15 (Fla. 1990) the Florida Supreme Court adopted § 552 as applied to accountants and held that there did not have to be privity with a third-party who was damaged by the accountant's negligence. *See Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 640 (11th Cir. 1990) (affirming application of § 552 in Florida and rejecting the requirement of privity).

Although the opinion in *First Florida Bank* applied § 552 to accountants, the same standard was expanded and applied to other professionals "who supply expert information for the purpose of guiding others in business transaction," including engineers, in the case of *Bay Garden Manor Condominium Assoc., Inc. v. James D. Marks Assoc., Inc.,* 576 So.2d 744 (Fla. 3d DCA 1991). In *Bay Garden*, a condominium association sued the engineers who had been retained to perform inspections of the buildings and provide a structural report before conversion of the apartment complex into a condominium project. *Id*. at 745. The inspection reports were then provided to each condominium buyer pursuant to Florida statute. *Id*. After the unit owners moved into their apartments they discovered that the condition of the building was not as represented by the engineers in the reports, and they sued the engineers for negligence. *Id*. The appellate court held that the engineers could be sued in negligence by subsequent purchasers of the condominium units, even though there was no privity between the purchasers and the engineers who had performed the inspection work. *Id*. (citing *First Florida,* 558 So.2d at 15).

The court found that § 552 included engineers within its scope because "engineering" is a profession and it was "undisputed that the engineers were hired to prepare reports of a structural inspection which would guide others in business decisions." *Bay Garden*, 576 So.2d at 746 (citing *Pensacola Exec. House Condo. Ass'n v. Baskerville-Donovan Eng'rs, Inc.*, 566 So.2d 850 (Fla. 1st DCA 1990), *approved*, 581 So.2d 1301 (Fla. 1991)). The court additionally held the main questions to be decided on remand were whether the inspection reports were false, whether the unit owners were persons whom the engineers knew would rely on those opinions, and whether the units owners suffered pecuniary loss[5] as a result of a justifiable reliance on the information – without regard for privity. *Bay Garden*, 576 So.2d at 746.

In this case, Epic contends Herons Cove has failed to adequately plead that Epic knew Herons Cove would rely on its Reports because the Complaint and supporting exhibits allege that no company other than PCA retained Epic by executing the engagement letter and the authorization to proceed; the engagement letter and the acceptance are also silent as to the interest of any third-party beneficiary. Doc. No. 5.

Herons Cove points to allegations in the Complaint, that Herons Cove "made it clear" to all professionals engaged, including Epic, that it intended to convert the property from a rental community into a condominium community. Doc. No. 2 ¶ 10. In connection with PCA's role in assisting to evaluate the project, PCA "retained Epic Consulting on behalf of Herons Cove to perform" the Reports "for the benefit of Herons Cove." Doc. No. 2 ¶12. As currently plead in the

---

[5]Although Epic also argues that Heron Cove seeks "solely economic damages," it does not provide any further analysis. Doc. No. 5 at 6. As the Fifth DCA has recognized in discussing limitations in the impact of the *Bay Garden* decision, it "did not discuss the fact that the plaintiff therein would also have a third-party beneficiary action against the professional, or why the economic loss rule should not bar the negligence action." *Ocean Ritz of Daytona Condominium v. GGV Associates, Ltd.,* 710 So.2d 702, 704 (Fla. 5th DCA 1998). Because Epic has not raised the economic loss rule, the Court does not address it at this stage in the proceedings.

Complaint, it is "conceivable" that Barry Watson, by virtue of the dual hats he wears as president of PCA and Watson Realty and Management[6], could have indicated to Epic employees or agents that Herons Cove would rely on the Reports.

As to this crucial element of the claim, however, Herons Cove has failed to allege "plausible" *facts* suggesting that *Epic knew Herons Cove* would rely on the Reports, particularly in light of the lack of any language on the face of the Reports or engagement letter indicating Herons Cove's reliance. Supreme Court precedent in *Twombly*, requires that Herons Cove must "plead enough facts to state a plausible, and not merely conceivable, basis for the claim." *Twombly*, 127 S.Ct. at 1965. It is respectfully **RECOMMENDED** that the claim for negligence be **DISMISSED** with leave to amend consistent with the foregoing.

2. *Certification/Limitation No. 6*

As a final argument on Count I, Herons Cove asserts that language contained in Certifications/Limitation No. 6 ("Certification No. 6") of the Property Condition and Condominium Conversion Reports authorizes Herons Cove to rely on the Reports based on the following:

> Primary Capital Advisors, its employees, agents, successors, and assigns may rely upon this report in evaluating a request for an extension of credit (the "Mortgage Loan") to be secured by the property. This information also may be used by *any actual or prospective purchaser,* transferee, assignee, or servicer *of the Mortgage Loan*, any actual or prospective investor (including agent or advisor) in any securities evidencing a beneficial interest in or backed by the Mortgage Loan, any rating agency actually or prospectively rating any such securities, any indenture trustee, and any institutional provider(s) from time to time of any liquidity facility or credit support for such financing.

Doc. No. 2-3 at 3; Doc. No. 2-4 at 2 (emphasis added). Herons Cove argues that because Barry Watson, president of PCA, may rely on the Reports, so may Herons Cove since Watson is also

---

[6] Plaintiff Herons Cove Apartments, LLC alleges two of its investors were Herons Cove Investors, LLC and Watson Real Estate and Management, Inc. Doc. No. 2 ¶ 7.

president of Watson Real Estate and Management, which is a member of Plaintiff Herons Cove Apartments, LLC.

As pointed out by Epic, Herons Cove has not asserted a breach of contract claim, third party beneficiary or otherwise. Assuming *arguendo* that Herons Cove could assert a breach of contract claim, under Florida law, a court interpreting a contract is to give effect to the plain and ordinary meaning of its terms. *Golf Scoring Systems Unlimited, Inc. v. Remedio,* 877 So.2d 827, 829 (Fla. 4th DCA 2004) (citing *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So.2d 126, 132 (Fla. 2000)). "Words should be given their natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances, and reasonable construction is preferred to one that is unreasonable." *Golf Scoring,* 877 So.2d at 829. On its face, the language of Certification No. 6 limits reliance on the Reports to evaluations of "a request for an extension of credit (the "Mortgage Loan"). Herons Cove alleges its reliance on the Reports was for purchase of the Property, not the Mortgage Loan, thus, this section is inapplicable on that basis alone.

Moreover, the language of Certification No. 6 is not ambiguous, as Herons Cove contends, in arguing that the phrase "actual or prospective purchaser" could refer to a purchaser of the Mortgage Loan *or* the Property. Certification No. 6 refers to the ways mortgage loans secured by real property are transferred or sold on a secondary market or used to back securities. On its face, the "actual or prospective purchaser of the mortgage loan" refers to a purchase on the secondary market of the mortgage loan or investment in a security backed by a mortgage loan secured by the Property. *Cf. Anchor Sav. Bank, FSB v. United States*, 81 Fed. Cl. 1 (Ct. Fed. Cl. 2008) (describing advent of the secondary market for comparable residential real estate mortgages). It does not refer to purchase of "the Property" itself. When a mortgage is originated, a lender may hold the mortgage loan in its

investment portfolio; sell it on the secondary market to an investor who will hold it in its own portfolio; or the investor may select it from an inventory to pool together into securities offerings, which are sometimes offered to institutional investors. *Id*. at 20. Accordingly, the phrase "actual or prospective purchaser" unambiguously refers to the "purchaser" of the Mortgage Loan and not the purchaser of the Property itself. A purchaser of the Property in most cases would be an entity not necessarily related to the party obtaining the original mortgage on the Property, who would fund the purchase of the Property based on the Property's condition *as well as* the entity's unique creditworthiness. Certification No. 6 does not "expressly acknowledge" that prospective purchasers of the Property can rely on the Reports. It is respectfully **RECOMMENDED** that any claim arising from a duty allegedly arising from the language of Certification/Limitation No. 6 be **DISMISSED**.

### *B. Count II: Fiduciary duty claim*

Herons Cove alleges that Epic had a fiduciary obligation to Herons Cove "to provide them with accurate and competent information." Doc. No. 2 ¶ 35. Epic contends that Herons Cove's claim for breach of fiduciary duty should be dismissed because the parties were dealing at arms length; thus no fiduciary duty could have possibly arisen. Doc. No. 5 at 11. Herons Cove does not directly address Epic's arguments about fiduciary duty, other than arguing its "common law tort claims are not barred by the lack of privity of contract between" the parties. *See* Doc. No. 12.

Herons Cove cannot morph its negligence claim into one for breach of fiduciary duty merely by asserting a heightened duty exists "to provide accurate information." Epic correctly argues Florida law on fiduciary duty; the Court has found no precedent that establishes such a duty between engineers and their clients. Generally, "[i]n an arms-length transaction, there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other

party could, by its own diligence have discovered." *Watkins v. NCNB Nat. Bank of Florida, N.A.*, 622 So.2d 1063, 1065 (Fla. 3rd DCA 1993) (lender-borrower transaction) (citing *Lanz v. Resolution Trust Corp.*, 764 F.Supp. 176, 179 (S.D. Fla.1991)).  It is respectfully **RECOMMENDED** that the claim for fiduciary duty be **DISMISSED** with prejudice.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 7, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy